Good morning, Your Honors. May it please the Court, my name is Krista Hart. I represent David King, the petitioner in this habeas case. There are two issues in this case, the identification issue and the search issue. The first issue, the identification issue, the Third District Court of Appeals, the last reasoned opinion by the State Court, presumed error. They presumed that the identification procedure used during the second jury trial was, in fact, impermissibly suggestive. After making the finding or presuming that there was error, they went on then to analyze the error under the Chapman standard, that it was harmless beyond a reasonable doubt. Based on the fact that they have already found error, I believe the error is not harmless beyond a reasonable doubt, and under the Brecht standard, it is injurious, substantial and injurious, to the jury trial finding. And that can be – that's based on the fact that the first jury trial, which was the exact same evidence except for the identification procedure, the jury deliberated for two and a half days, 15 hours, and were – couldn't reach a verdict. They were split seven to five. We don't know how they were split, but that's pretty close to being down the middle. So it was a close case. And the case law on that issue says that long deliberations, a close case, as in the seven to five, indicates that it's a close case. It's not overwhelming. The Third District Court of Appeals ignored that information. The Third District Court of Appeals simply said, well, there was overwhelming evidence, therefore, this error couldn't have had an effect on the jury's verdict. Let's see. You say it's a close case, right? His fingerprints are at the home, at the point of entry, at Clay's home. She said at the beginning and really throughout, well, he's similar to the person who did it, but I can't really certainly identify him necessarily. A flashlight was taken from her home, and it's found close along his route or close to where he's caught. He has the precise amount of money that the victim gave the burglar. And when the police approach him, he takes off running because he doesn't want to have anything to do with police. In fact, he's so scared, as I recall, isn't he the one who runs into somebody else's house? Correct. And offers them $180 for them to say that he's not there or else that he belongs there. So he's really trying to escape the police. Now, the worst, the best thing in his favor, it looks like, is that she can't really make a positive identification. What makes this such a close case in your mind besides the fact that a jury hung? Besides that, the fact that the jury hung, if you take that in combination with Mr. King's testimony during the trials and that he had been at the house, he admitted he had been at the house, he admitted that he had touched the screens earlier in the day, that explains his fingerprints being present there. Well, he says that, but she said she'd never seen this person before in her life, right? I agree, but I believe that the first jury gave some credit to Mr. King's testimony. And he happened to have the exact amount of money on him because? She paid him, was going to pay him to do some work on the house. Right. But that's all circumstantial evidence. And if you take that in combination with the fact that the first jury did appear to give some credit to Mr. King's testimony, which is why they, after two and a half days of deliberation, came back seven to five that they couldn't reach a verdict. So I believe that that in and of itself indicates it's a close case. Well, one difference between the two trials is that the victim equivocated on identification in the first trial and didn't in the second. Did that make a difference, do you think, to the jurors? Yeah, I believe it was the witness's identification that made the difference to the jurors. She specifically said during the first trial, no, I don't see the person who assaulted me in the room. Right, but it's the equivocation, not necessarily the identification. Correct. But that's the difference, though, between the two trials, is her testimony about the identification in the first trial, and they hung after two and a half days of deliberation, versus at the second trial she says, yeah, I think that's him. And the identification problems were fully argued before the jury? Yes. Yes. She was cross-examined about her prior lack of identification and her prior inability to make a firm identification. So why isn't that significant in terms of habeas analysis, that these identification problems were fully aired before the jury and that the jury had took into consideration the prior statement and all of the surrounding, I guess, limitations on her ability to see, et cetera? It's significant because at the first trial, when there was no identification, they weren't able to reach a verdict, which is demonstrative of the fact that all of that cross-examination wasn't sufficient to challenge her identification, her somewhat ambiguous identification. She says, yes, I think that's him. So the – if you compare the two trials, that cross-examination didn't serve the same purpose, wasn't sufficient as it was in the first trial when she didn't identify him. What do you think it was about the second trial that made it impermissibly – the identification, the subject of impermissible suggestiveness? At the second trial, just like in the first trial, she had been told that the perpetrator would be – the suspect would be sitting at counsel table. So she knew to look at counsel table for these individuals. The three folks sitting at counsel table were the defense counsel, a white male, the prosecutor, a Hispanic male, and the defendant, an African-American male. And so he was the only one of that race sitting at the counsel table where the prosecutor had directed her to look. So that makes that impermissibly suggestive. What Supreme Court case do you think is the best for you on that particular issue? Because the Supreme Court really hadn't spoken to that question. About in-court identification procedures? Yes. Probably Watkins v. Souders. Mm-hmm. They talk about how there should be – in some cases, there may not be a need for a pre-trial out of the presence of the jury hearing to determine the independent reliability of an identification procedure. And in this case, that probably should have been done, because she – if you consider the Neal v. Biggers factors, it does seem to support a finding that the in-court identification procedure was impermissibly suggestive. Okay. Do you want to reserve some time for rebuttal? Yes. Okay. Thank you. Good morning, Your Honor. This is David Andrew Eldridge, Deputy Attorney General for Respondent. Watkins doesn't say that in some cases it may be unnecessary. What Watkins says, it's definitely not necessary under the circumstances like those in Watkins, such as where everything you want to say about unreliability can be told to the jury. In that case, it's not. Watkins does leave open the possibility that there might be some case in which a hearing is necessary, but it does not suggest that it ever – it doesn't say that it ever is. And no case has interpreted it as ever saying, as I understand, that it's actually required in some case. In fact, the language of Watkins is contrary to that. It clearly does not identify any case in which it would be necessary. It merely says it's clearly not under circumstances such as this, and they leave open that possibly there will be some case in which it is necessary. The court of appeals – similar bills and race would be put in a lineup and the victim would identify, right? It was an in-court identification. It was, although I don't mean to suggest that even in that situation you would be constitutionally entitled to an order of exclusion. No, but in this sense, if you have a – particularly given the fact she was uncertain about the identification of the first trial, and the only person that meets even the rough description of the defendant is sitting at counsel table, that's fairly suggestive, right? Well, actually, I don't think so because – well, when you say fairly suggestive, anything can be suggested. The fact that the person is a defendant is somewhat suggestive in the sense that there's some suggestion that this is the person who might have done it. Even when you get into analyzing it when they have had hearings, the question is whether it's unduly suggestive. And the idea that somehow we should take some measure to make sure that no one points the finger at the defendant sitting in court is ridiculous. You'd have to have multiple black persons, for example, sitting near the table or perhaps at the table in order to avoid the possibility that a witness might point the finger at the defendant. The remedy or the safeguard against any strong elements of untrustworthiness, and we still admit evidence, as Brent Manson says, even when there are strong elements of untrustworthiness, is to tell it all to the jury. The jury is sitting there. The jury can see that he's the only black person sitting at the table. If it is so untrustworthy, then the jury will reject it. And that is your protection under the Constitution, not an order of exclusion, not an order from a judge to take the issue away from the jury. And that's exactly what is being asked for. And that's exactly what Watkins says, no, you're not entitled to. How do you explain the difference in the witness's identification, failure at the first trial and the identification in the second trial? Actually, it wasn't clear to me at the first trial that the witness ever, and I pointed this out in the brief, in the first trial really didn't identify him or was asked and didn't identify him. To the contrary, she made clear she couldn't really see very well at the witness table itself, I mean, on the witness stand itself. Later, when she's standing in front of him, she was not asked, is this the man? What she was asked, had you ever seen him before the day of the robbery? I can point you to page 22, footnote 10 of the appellee's brief. Oh, your brief, okay. Yes. But you initially said at the first trial she didn't see anybody in the courtroom. She did. She also made clear that she can't see very well from a distance. So there is a fair inference, and we have to trust the jury's assessment ultimately, that perhaps she simply didn't see him from where she was sitting. Otherwise, there really wouldn't have been much reason to have her come and stand in front of him later. I don't have any, actually, other points on that one except to point out that, again, the Court of Appeal did not find error. So that is not the last reasoned decision on the question of whether there was error at all. The last reasoned decision is that of the trial judge who overruled the objection to admission of the evidence. So the Court of Appeal declined to reach that question. So the side is on the merits by the trial judge. And I don't have any particular points I care to raise as to the other, but I'm happy to answer any questions the Court may have. Any questions? Thank you, counsel. Thank you. The case of Watkins and Souders rests on facts that it's a combination of two different cases that were combined, and in those cases, within a day or two following the incident, the witnesses, multiple witnesses in each case, not just one witness, but multiple witnesses were looked at. They did photo lineups, did in-person show-ups, looked through numerous photos at the police station, and picked out the suspects. And when they stood by those and were very certain of their identifications, which is substantially different than the facts and circumstances of this case, on the night of the event, she couldn't identify Mr. King as the suspect, and at further hearings, she was unable to identify Mr. King as the suspect. When asked specifically, do you see the person that assaulted you in the room at the first jury trial, she said no. The prosecutor then marched her down in front of the table and said, have you seen this man before, and she said no. So clearly, she couldn't identify him at the first trial. Now, yes, you can have identification procedures in court that are not impermissibly suggestive when a witness has identified the person in a fair lineup, like you said with same people, same race, same build, same hairstyle, or similar. That really never happens on in-court identification, does it? What's that? To bring in, unless someone's trying a trick or something like that, we don't require the prosecution to produce. Correct. And that is typically because within discovery, counsel knows that there has been a previous identification procedure. And when there's not a previous identification procedure, the appropriate remedy is to make a motion to preclude any in-court identification because it would be impermissibly suggestive. And that's a procedure that's used regularly in trial courts. It wasn't used – it was used during the first trial in this case and denied. Then the same attorney who was doing the second trial did not make that motion. And I submit that he should have. That based on her previous inability to make an identification, and she actually made some ambiguous, uncertain types of identifications, that I would have moved to – it should have been moved to have that question not asked at all. Okay. Thank you, counsel. Thank you. The case is certainly submitted.
judges: Fernandez, Nelson, Thomas